# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Angela Roviralta Linnon,　　　　)
　　　　Petitioner,　　　　　　　)
　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　　　1:17cv516 (CMH/JFA)
　　　　　　　　　　　　　　　)
Harold W. Clarke,　　　　　　　)
　　　　Respondent.　　　　　　　)

FEB 2 3 2018
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Angela Roviralta Linnon, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of her convictions in the Circuit Court of Hanover County. Respondent filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief and exhibits. Petitioner was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. After receiving additional time, petitioner filed a response with supporting exhibits. For the reasons that follow, respondent's Motion to Dismiss will be granted and the petition will be dismissed.

## I.

The record reflects the following facts and proceedings.[1] Petitioner is incarcerated pursuant to a final judgment of the Circuit Court of Hanover County, entered November 3,

---

[1] The determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The state court record on direct appeal and collateral review does not include a recitation of the underlying facts. Therefore, the Court has taken the facts directly from the trial court proceedings. See Whipple v. Uribe, No. 1:09-CV-01437-JLT HC, 2011 WL 1566687, at *1 (E.D. Cal. Apr. 22, 2011) ("Because Petitioner did not pursue his appeal in the California appellate courts, there is no formal recitation of the facts underlying Petitioner's conviction. Accordingly, the Court will utilize the summary of pertinent facts as contained in the report of the probation officer that was submitted to the trial court for sentencing."). Implicit in the jury's conviction of petitioner is the determination that the facts presented by the Commonwealth were true.

2011.[2] Sentencing Order, Linnon v. Commonwealth, CR10000341, (Hanover Cty. Cir. Ct. November 3, 2011). Petitioner was convicted by a jury of one count of sodomy in violation of Va. Code § 18.2-361(A);[3] one count of conspiracy to commit sodomy in violation of Va. Code §§ 18.2-22,[4] 18.2-361(A); and two counts of taking indecent liberties with a minor in a custodial or supervisory role in violation of Va. Code § 18.2-370.1.[5] Pet. at 1; Linnon v. Commonwealth, Case Nos. CR10000341-02 to 05 (Hanover Cty. Cir. Ct. 2011). Petitioner was sentenced to nine years imprisonment: two years for each of the indecent liberty counts and the conspiracy count and three years for the sodomy count. Pet. at 2.

---

[2] Petitioner states that the judgment of conviction date was March 31, 2011, the day after the jury had returned its guilty verdict against her, Trial Tr. Vol. II, March 30, 2011; however, a "Jury Trial Order" was not entered by the Circuit Court of Hanover County until April 11, 2011. Jury Trial Order, Linnon v. Commonwealth, CR10000341, (Hanover Cty. Circuit Ct. April 11, 2011). The final sentencing Order was entered on November 3, 2011. Sentencing Order, Linnon v. Commonwealth, CR10000341, (Hanover Cty. Cir. Ct. November 3, 2011).

[3] At the time of petitioner's conviction, Va. Code § 18.2-361(A) provided: "If any person carnally knows in any manner any brute animal, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony."

[4] Va. Code § 18.2-22 provides, in relevant part:
> (a) If any person shall conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth, or if he shall so conspire, confederate or combine with another within this Commonwealth to commit a felony either within or without this Commonwealth, he shall be guilty of a felony . . . .

[5] At the time of petitioner's conviction, Va. Code § 18.2-370.1 provided, in relevant part:
> A. Any person 18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally (i) proposes that any such child feel or fondle the sexual or genital parts of such person or that such person feel or handle the sexual or genital parts of the child; or (ii) proposes to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361; or (iii) exposes his or her sexual or genital parts to such child; or (iv) proposes that any such child expose his or her sexual or genital parts to such person; or (v) proposes to the child that the child engage in sexual intercourse, sodomy or fondling of sexual or genital parts with another person; or (vi) sexually abuses the child as defined in § 18.2-67.10 (6), shall be guilty of a Class 6 felony.

## A. Facts Supporting Petitioner's Convictions

The facts related to petitioner's convictions for sodomy and conspiracy to commit sodomy are as follows. Craig Linnon, petitioner's husband at the time of the incident, taught a building trades class at a vocational school and petitioner was the school nurse.[6] Trial Tr. Vol. I, March 29, 2011 at 173, 181, 214–15. In November 2009, a sixteen-year-old male minor, T.D., was a student in Craig Linnon's building trades class at Hanover Trade School. Id. at 168, 172–73. One morning in November 2009, Craig Linnon sent a text message to T.D. asking if T.D. "would let [petitioner] give [T.D.] a blow job." Id. at 180. T.D. answered affirmatively and Craig instructed T.D. "to meet him at the door at school." Id. at 181–82. When T.D. arrived at the school later that day, he met Craig at the building trades classroom door. Id. Craig took T.D. to a storage closet where petitioner was waiting. Id. at 182-86. Craig asked T.D. if he could videotape T.D.'s interaction with petitioner. Id. at 186. Craig then left the storage closet, and petitioner asked T.D. if he was "sure [he] want[ed] to do this?" to which he replied affirmatively, and she performed oral sex on T.D. until he ejaculated; T.D. then returned to class and petitioner left the storage closet using the back door. Id. at 187-89. Craig told his other students that T.D. was in the storage closet "working on a project." Id. at 190. T.D. testified that when police first asked him about the encounter he told them that he "didn't know what they were talking about," but after police told T.D. that they had a video of petitioner performing oral sex on him, he believed he had been "caught" and admitted to the encounter. Id. at 207.

The facts supporting petitioner's convictions of taking indecent liberties with a minor in a custodial or supervisory role are as follows. As the school nurse, petitioner had the authority to excuse students from school. Id. at 243. She also occasionally taught a cosmetology class when the teacher was out. Id. at 302. A.G. was a sixteen–year–old minor female student in the

---

[6] Craig Linnon and petitioner were tried jointly but were represented by separate counsel.

cosmetology class. Id. A.G. had grown close to petitioner during her time at the trades school, frequently talked to her, and looked up to her. Id. at 304. On December 18, 2009, A.G.'s cosmetology class had a party in the classroom to celebrate the end of the fall semester. Id. at 309. During the party, petitioner stopped by the cosmetology class and invited A.G. and A.G.'s female friend to her home to drink alcohol that evening. Id. at 312. A.G. accepted the invitation and asked if she could bring a friend; petitioner responded affirmatively. Id. at 314. The Linnons picked up the teenage girls later that evening, and they all went to purchase alcohol. Id. at 315. While Craig Linnon was inside the store purchasing the alcohol petitioner and the two girls remained in the car. Id. at 318. Petitioner asked A.G. if she would "ever suck [her] husband's dick," to which A.G. did not respond. Id.

When the Linnons and the two girls returned to the Linnon home, the Linnons supplied A.G. and her friend with alcohol in exchange for marijuana. Id. at 322. At some point, Craig told A.G. that petitioner had sexual fantasies about A.G. and that he had made a video of petitioner performing oral sex on T.D. Id. at 326–27. A.G. and her friend became uncomfortable by the sexual nature of Craig's comments and they decided to leave. Id. at 327. Craig drove them to the friend's home. Id.

On December 19, 2009, the Linnons again invited A.G. to their home. Id. at 255–56, 258. A.G. returned in the company of Jared Todd, her ex-boyfriend whom was one of Craig's students, and Todd's friend Tyler Scott.[7] Id. at 251, 254–57; Trial Tr. Vol. II, March 30, 2011 at 98. Both Todd and Scott were 18 years old. Trial Tr. Vol. I, March 29, 2011 at 281; Trial Tr. Vol. II, March 30, 2011 at 95. The Linnons supplied the teenagers with alcohol in exchange for marijuana from A.G., and the Linnons, Scott, and A.G. smoked marijuana. Trial Tr. Vol. I, March 29, 2011 at 264. At some point Craig, Todd, and Scott left the house to purchase more

---

[7] Tyler Scott did not know either of the Linnons prior to December 19, 2009, and he was unable to identify petitioner in the courtroom. Trial Tr. Vol. II, March 30, 2011 at 98, 111.

beer. Id. at 262–63; Trial Tr. Vol. II, March 30, 2011 at 110. While they were gone, petitioner asked A.G. if A.G. would mind if she performed oral sex on Todd, A.G.'s ex-boyfriend. Id. at 23–24.

After Todd, Scott, and Craig returned to the house, everyone played a drinking game and the conversation became sexual in nature. Trial Tr. Vol. I, March 29, 2011 at 264; Trial Tr. Vol. II, March 30, 2011 at 115–16. Petitioner discussed her recent breast enlargement surgery and showed her breasts to Todd, Scott, and A.G. Trial Tr. Vol. I, March 29, 2011 at 276, 332. at some point, one of the Linnons suggested playing a "sexual fantasy"-themed version of Charades in the living room, for which everyone made up a card and the actions would be "live" rather than mimed. Id. at 266, 333. On his card, Todd wrote "nurse performs oral sex." Id. at 266. When petitioner pulled the card on which Todd had written "nurse performs oral sex," she pulled down his pants and began to fellate him and Scott rather than merely miming. Id. at 269–70; Trial Tr. Vol. II, March 30, 2011 at 118–19. At some point the Linnons became undressed and petitioner approached A.G. and asked A.G. to "fuck [her]." Id. at 336–37. Craig entreated A.G. to have sex with petitioner, but A.G. declined. Id. at 336.

Eventually Todd and Scott left the living room and went to the bathroom, where they both decided to leave because they "were weirded out." Id. at 273; Trial Tr. Vol. II, March 30, 2011 at 122, 131. When A.G. realized Todd and Scott had left the living room, she became "freaked out," found her clothes, and got dressed. Trial Tr. Vol. I, March 29, 2011 at 338. All three teenagers then said goodbye to the Linnons, retrieved the remaining beer from the refrigerator, and left. Id. at 274–75. Petitioner and Craig Linnon continued to have sex on the living room floor in front of the teenagers as the three departed. Id. at 272–73; Trial Tr. Vol. II, March 30, 2011 at 124. After they left, the teenagers made a pact not to tell anyone. Trial Tr. Vol. I, March 29, 2011 at 277–78.

5

When the police first approached A.G. about what had occurred at the Linnons' house she did not tell them everything that happened because, she later confided, she did not want to talk to a man about it. Id. at 343. A.G. further stated that she did not originally disclose some of the details of the events involving the Linnons because she recalled certain information piecemeal and it was "extremely hard to talk about." Trial Tr. Vol. II, March 30, 2011 at 23–25. Similarly, Todd denied that anything had happened when the police first approached him because he did not want anyone finding out about the encounter, which he felt would make him look bad. Trial Tr. Vol. I, March 29, 2011 at 278.

### B. Petitioner's Trial, Direct Appeal, and Post-Conviction Proceedings

On March 29, 2011, the first day of petitioner's jury trial, Assistant Commonwealth's Attorney Shari Skipper stated, outside the presence of the jury, "I'll state for the record that the Commonwealth made no deals of any kind, of any nature, offered anything in return for anybody's testimony, whether it be in the form of an agreement on any criminal charges, monetary, nothing."[8] Id. at 167. During the trial, one of the prosecution's witnesses, Tyler Scott, was asked on cross examination whether the prosecutor had advised him that she was "waiting to see how [Scott] testified before they made any deals for [him]." Trial Tr. Vol. II, March 30, 2011 at 134–35. Scott answered this question "no." Id. When defense counsel probed further and asked whether the prosecutors had promised Scott they would not prosecute

[8] In addition, Assistant Commonwealth Attorney Shari Skipper had advised the trial court during a July 23, 2010 motions hearing that no agreements had been made with any witness and, if such an agreement were made prior to trial, the Commonwealth would provide it:

"Judge, what I also said in the motion was that the Commonwealth believes that this falls under the discovery motion to which the Commonwealth has already complied, and the Commonwealth understands that the discovery motion is continuing in nature. So, if there comes a time that the Commonwealth does enter into some kind of agreement with a witness, under the continuing discovery motion, we will reveal that. So, we ask that this particular motion be denied . . . ."

him for receiving oral sex from A.G., a minor, Scott stated that he believed they offered him immunity with respect to any such conduct.[9] Id. One week after testifying in petitioner's trial, Scott entered a plea of guilty for unrelated charges and, during his plea hearing, the prosecution stated that one of Scott's charges was being amended "based upon [Scott's] cooperation in another case." Dkt. No. 22; Id. Ex. 20.

During the sentencing phase of petitioner's trial, P.D., the mother of T.D., testified pursuant to the Virginia victim impact statute. Specifically, P.D. stated:

> I'm before all of you as the mother of one of the minor victims. I say to the jury, thank you for validating our children; thank you for your public service to our community. I'm so sorry you guys had to endure and be exposed to this trial and all these horrible details. I'm so thankful that you're here and paying so much attention during this very unsettling trial. I do ask that you forgive me for reading, but I'm quite emotional right now and don't want to forget anything.
>
> My name is [P.D.]; I'm the mother of [T.D.], and I'm not going to hold my head down in shame after all of the things that have been disclosed over the last two days. I'm here standing up for what is right. That is exactly what I asked my son 17 months ago – 15 months ago when we found out about this, that he had to speak truth. The truth was the only thing that was going to set him free from this; he had to speak truth. We didn't come with any rumors, lies or innuendoes like they tried to bring forth.
>
> These victims have suffered and suffered greatly. They're the real heroes in this whole case against the Linnons. They had to speak truth when truth was very, very difficult. They've had to divulge extremely personal information in a court of law amongst strangers. My whole family, as well as all of these other families, need to be set free from this prison that they have held us captive in for the last year and a half.
>
> I'm so proud of my son, [T.D.]. I'm proud of those other teenagers too, but especially [A.G.]. They spoke truth even when it was extremely embarrassing. They spoke truth even though they had been betrayed, they had been embarrassed, humiliated and abused by their so-called friends. I am trying very hard these days to convey to my son how much he is loved, how much he is adored, and that this was in no way his fault.

---

[9] The Commonwealth's Attorney denied that any plea agreement was reached with Scott until after petitioner's trial, but she stated that she advised Scott's defense counsel that the Commonwealth was "not planning to charge Mr. Scott with any crime arising out of the events which took place at the Linnon residence so long as he testified honestly and completely." Aff. of Shari Skipper ¶ 2, Dkt. No. 16, Ex. 1.

This was not the fault of these children. The fault is very clear to me and it lies with the child abusers right here, Craig and Angela Linnon – exactly what you said – the predators that they are. It's very clear to me that you groomed these children for abuse and you waited and waited. You took the opportunity that you felt was secure and you pounced on them and you devoured them.

In this trial there's plenty of guilt, plenty of shame, plenty of lack of integrity, but today in this moment I have the opportunity as you do, Jury, to be a part of righting this wrong. I'm so thankful for you-all. I've had the opportunity to speak on behalf of my son and my family, and we do not want Craig and Angela Linnon to ever have an opportunity to be around children in any capacity. We have a hope and a prayer that our judicial system will work against the two of you and put you behind bars for a very long time. We want the real threats to this society put away, and we are asking for the maximum penalty under law.

If any of you think for one moment something like this couldn't happen to you or your family – there are other predators out there. Not in my wildest dreams did I ever imagine sitting here today, not in my wildest dreams. We are living, breathing, normal proof that it can happen to just regular families living day in and day out doing all the normal stuff that families do.

The two of you make me sick. The two of you have made a mockery out of family, a mockery. How dare you do what you did to my 16-year-old son. You are a mother. How dare you. I want to look in your eyes. You-all are evil. How dare you-all do what you did.

[A.G.] very eloquently said, "But she's a mom." She didn't expect her friend that's a mom to be asking if she could give a blow job to her ex-boyfriend. [T.D.] didn't expect to get a cell phone call from his friend that he wanted to offer his wife up for my son to get a blow job. This is not even in my wildest dreams. We have had to have some of the most awkward conversations with my elderly parents, with all of my family members, especially with my youngest daughter. This has been a nightmare.

Trial Tr. Vol. II, March 30, 2011 at 400–03. Following P.D.'s victim impact statement, Craig Linnon's counsel objected, stating "there's nothing in there that has to do with her son; it all dealt with her. I can make a motion for mistrial." Id. at 404. The jury was excused, and counsel for Craig further stated:

Judge, as much as I hate to do it, she said nothing about her son. It was more about the affects it had on her and her vilification of my client. That's the Commonwealth's job, not her job. I think that's beyond the bounds of what's allowed in this part of the proceeding. I think it inflames the jury, and quite frankly, I think I'm compelled to make a motion for mistrial at this point.

Id. Petitioner's counsel joined, stating "Your Honor, I will have to make that same objection for my client Angela Linnon." Id. at 404–05.

The trial court took a brief recess and denied the motion, finding that:

> [Virginia Code § 19.2-295.3] provides "Upon finding that the defendant is guilty of a felony, the court shall permit the victim, as defined in [Va. Code §] 19.2-11.01, to testify in the presence of the accused regarding the impact of the offense upon the victim. In the case of trial by jury, the court shall permit the victim to testify at the sentencing hearing conducted pursuant to [Va. Code §] 19.2-295.1."
>
> Then we go to 19.2-11.01B, "For purposes of this chapter, 'victim' means a person who has suffered physical, psychological or economic harm as a direct result of the commission of a felony." It concludes, "The parent or legal guardian of such a person who is a minor. The victim's testimony shall be limited to the factors set forth in clauses 1 through 6 of subsection A of [Va. Code §] 19.2-299.1"
>
> Subsection A of 19.2-299.1 states that those factors include, "the identity of the victim, an itemization of any economic loss suffered by the victim as a result of the offense, identify the nature and extent of any physical or psychological injury suffered by the victim as a result of the offense, identify any change in the victim's personal welfare, lifestyle or familial relationships as a result of the offense, identify any request for psychological or medical services initiated by the victim or the victim's family and provide such other information as the court may require."
>
> Washington versus Commonwealth, 48 Va. App. 486, states that it is within the sound discretion of the trial court to permit the testimony during the Commonwealth's case in chief and at the sentencing phase of the defendant's trial. It further opines that the victim has a qualified statutory protective right to be heard at sentencing.
>
> I find as follows: I find that the witness is a proper person to testify pursuant to the Victim Impact Law . . . I find that the testimony of the witness did detail changes in the familial relationships of the family and of the victim as a result of the offense. I find that the remaining statements made by the witness were not too inflammatory or prejudicial as to require a mistrial. The motion for mistrial will be denied, and the jury will be brought back in.

Id. at 406–08. On June 16, 2011, petitioner's trial counsel filed a "Motion for Mistrial & Renewed Motion on All Previous Motions and Objections Therefrom" asserting that P.D.'s testimony "went far outside the scope of the limitations given by the Virginia Code," inflamed the jury, and "prejudiced the jury before [it] rendered a decision as to punishment." Mot. For

9

Mistrial & Renewed Mot. On All Previous Mots. & Obj. Therefrom, <u>Linnon v. Commonwealth</u>, Case Nos. CR10000341-02—05 (Hanover Cty. Cir. Ct. June 16, 2011). Petitioner also argued, for the first time, that P.D's statement that she wanted petitioner to receive "the maximum penalty under law" violated petitioner's Eighth Amendment rights. <u>Id.</u>

On July 18, 2011, petitioner's trial counsel filed a "Motion to Strike the Jury's Recommended Sentence and Grant the Defendant a Re-Sentencing" requesting that the trial court strike the jury's sentence and re-sentence petitioner "in accordance with the Virginia Department of Corrections Presentence Investigation Report completed by Probation and Parole Officer S.B. Medlin." Mot. To Strike the Jury's Recommended Sent. & Grant Def. a Re-Sent., <u>Linnon v. Commonwealth</u>, Case Nos. CR10000341-02—05 (Hanover Cty. Cir. Ct. July 18, 2011). At an October 27, 2011 motions hearing, the court denied petitioner's motions and imposed the jury's recommended sentence. Hr'g Tr. Oct 27, 2011 at 252. Specifically, the trial court ruled that:

> At the end of the witness' testimony – . . . in the sentencing phase of trial – defense counsel each moved for a mistrial on the basis that the testimony exceeded that allowed by the victim impact statute, [Va. Code] Section 19.2-295.3. The Court considered this argument and denied the motions for mistrial, finding that the testimony of witness was at least in part, i.e., as to the effects of the crimes on the familial relations of the victim, proper and that the remaining testimony was not so inflammatory or prejudicial so as to require a mistrial. No other objections or motions were presented by defense counsel, whereafter, the jury received further instruction and the arguments of counsel and subsequently returned sentencing verdicts. After the trial, defense counsel renewed the motions for mistrial and thereafter, without waiving mistrial, subsumed their arguments in motions to set aside the jury verdicts for error occurring during the sentencing phase of the trial. The error asserted is two-fold. First, the testimony of the witness failed to adhere to the limits imposed by Section 19.2-295.3 and served only to inflame the jury. Second, admission of the testimony was a violation of the Eighth Amendment of the constitution and Virginia law inasmuch as the witness stated her characterizations and opinions about the crimes, the defendants and the appropriate sentences.
> The Court finds that the motions for mistrial made at the close of a witness' testimony were insufficient to guide the Court to thereafter strike all or part of the witness' testimony, or to instruct the jury to disregard such testimony.

There being no contemporaneous specific objection to the admission of the testimony or motion for a limiting instruction, the Court rules today that any objection to the testimony is now waived. By the same reasoning, the constitutional objection to the admission of the testimony being raised for the first time some three months after the sentencing hearing is also now waived.

Beyond that, even if the defendants did properly preserve these issues, the Court finds that the improper testimony was harmless beyond a reasonable doubt.

\* \* \* \*

The jury was instructed that the range of punishment for all four crimes of which Angela Linnon was convicted was one to five years. For one of those convictions, the jury returned a verdict of three years. For the other three convictions, the jury returned a verdict of two years, which is in the low end of the range. Angela Linnon could have been sentenced to twenty years in the penitentiary, and the jury returned a verdict of nine years. There is no evidence that the jury was inflamed by the witness' testimony when sentencing either defendant.

Defendants' motion – defendants' motions to set aside the jury's recommended sentences is denied because the defendants did not properly preserve the issue, and, even if properly preserved, the witness' improper testimony was harmless error. The motions are denied.

Id. at 167–69.

Petitioner pursued a direct appeal in the Court of Appeals of Virginia, which was denied in a per curiam order dated September 19, 2012. Record No. 2273-11-2. Her request for review by a three judge panel was denied on December 27, 2012. Id. at 47. Petitioner subsequently appealed her convictions to the Supreme Court of Virginia, which refused her appeal on April 18, 2013. Record No. 130131.

Petitioner filed a petition for writ of habeas corpus in the Circuit Court of Hanover County on April 16, 2014, which that court dismissed on June 2, 2016. Linnon v. Brown, Case No. 085CL14001027-00 (Hanover Cty. Cir. Ct. June 2, 2016). According to petitioner, on May 27, 2016, she became aware that Tyler Scott had entered a plea agreement with the Commonwealth in an unrelated criminal case one week after her trial. Pet. at 44. Petitioner allegedly first discovered this information in a phone call with her mother, who advised petitioner that Craig Linnon had sent a letter that contained "direct evidence establishing that

11

Scott received consideration or favors in exchange for his cooperation in their case." Id. at 45. Specifically, Scott's possession of a firearm charge "was amended to misdemeanor disorderly conduct as a direct result of his cooperation in testifying in [petitioner]'s case." Id. at 44. By May 27, 2016, petitioner had already exhausted her options on direct appeal and had filed a State Habeas Petition in the Circuit Court for Hanover County; however, she did not immediately move to amend her pending state habeas petition.

Rather, on June 22, 2016, twenty days after the circuit court entered its order dismissing her state habeas petition, petitioner filed a "Motion to Reopen and to Allow Petitioner to Amend her Petition for Writ of Habeas Corpus." Mot. to Reopen and to Allow Pet. to Amend Her Pet. for Writ of Habeas Corpus, Linnon v. Brown, Case No. 085CL14001027-00 (Hanover Cty. Cir. Ct. June 22, 2016). She argued that her request to amend the petition should be granted based on "new impeachment evidence concerning a witness in her case," which demonstrated that the Commonwealth had violated Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972). In particular, petitioner argued that based on the Commonwealth's alleged violation the state limitations period for filing habeas petitions should be tolled pursuant to Hicks v. Dept of Corrs., 768 S.E.2d 415 (Va. 2015) and Va. Code § 8.01-229(D). On July 27, 2016 the circuit court denied her Motion to Reopen and Amend. Petitioner appealed the circuit court's dismissal of her habeas petition to the Supreme Court of Virginia on June 30, 2016. Petitioner's appeal was refused by the Supreme Court of Virginia on May 4, 2017. Record No. 161286. Petitioner filed the instant petition on May 2, 2017.

Petitioner challenges her convictions on the following grounds:

I. [Petitioner] Did Not Receive Effective Assistance of Counsel as Guaranteed to Her by the Sixth Amendment of the United States Constitution.

a) Trial counsel was ineffective when he failed to object during the sentencing hearing to the statement by T.D's mother, failed to ask to preview the written statement before it was read, failed to request a

12

curative instruction after it was read, and waited three months after the jury was excused to move for a mistrial.

b) Trial Counsel was ineffective when he failed to challenge Va. Code § 18.2-361(A) as unconstitutional based on the prevailing case law at the time of [petitioner]'s trial.

c) Appellate counsel was ineffective when he failed to challenge Va. Code [§] 18.2-361(A) as unconstitutional based on the prevailing case law at the time [petitioner]'s appeal was pending.

II. The Statute on Which Three of [petitioner]'s Convictions Were Predicated Was Held Unconstitutional by the United States Court of Appeals' Decision in McDonald v. Moose.

III. The Admission of P.D.'s Victim Impact Testimony at the Sentencing Phase of [petitioner]'s Trial Violated the Eighth Amendment to the United States Constitution.

IV. [Petitioner] was convicted and sentenced in violation of the Sixth and Fourteenth Amendments to the United States Constitution when the Commonwealth Concealed offers of favorable treatment to the key witness for the Prosecution, denying [petitioner] her right to Due Process Under the Fourteenth Amendment.

Because Claims I and IV were properly exhausted, they are appropriately addressed on the merits. Claims II and III, however, were found to be defaulted by the state habeas court and therefore, will be dismissed on procedural grounds.

## II. Procedural Bar

Where, as here, a state court has made an express determination of procedural default, the state court's finding is entitled to a presumption of correctness provided two foundational requirements are met. See 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259 (1989). Second, the state procedural rule used to default petitioner's claim must be an

independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v. Georgia, 498 U.S. 411, 423-24 (1991).

Here, the state habeas court held that petitioner's Claims II and III were not cognizable under Slayton because they could have been, but were not, raised at trial or on direct appeal. Final Order, Linnon v. Brown, Case No. 085CL14001027-00 (Jun 22, 2016). Because "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision," Mu'min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997), the effect of the state habeas court's ruling is to bar review of the claim in federal court, absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42.

### A. Claim II

The record reflects that plaintiff has failed to establish cause for the procedural default of Claim II. As discussed in further detail below, petitioner has not shown that her trial or appellate counsel was ineffective for not challenging the constitutionality of Va. Code §18.2-361(A). In addition, the record does not disclose that a factor external to the defense impeded compliance with a state procedural rule, or that the claim was novel. In fact, MacDonald's challenge to the statute was pending before this court at the time of petitioner's trial in March 2011 and before the United States Court of Appeal for the Fourth Circuit at the time of her appeal in November of 2011. Pet. at 2–4; see MacDonald v. Moose, 710 F.3d 154, 156 (4th Cir. 2013). Thus, the record establishes no cause.

Even if petitioner could establish cause, she could not establish prejudice or a fundamental miscarriage of justice given the Fourth Circuit's ruling in Toghill v. Clarke, 877 F.3d 547 (4th Cir. 2017). In Toghill, the Fourth Circuit considered "whether the Supreme Court of Virginia's decision to uphold Toghill's conviction under [the Virginia Supreme Court's] construction of [Va. Code § 18.2-361(A)] was contrary to or an unreasonable application of the Supreme Court's decision in Lawrence." Toghill, 877 F.3d at 556. The Fourth Circuit concluded it did not. In doing so, it distinguished Toghill from its earlier decision in MacDonald, observing that, since the MacDonald decision, the Supreme Court of Virginia had "narrowed the anti-sodomy statute under its own jurisprudence to authoritatively remedy any constitutional infirmity and prohibit convictions that might run afoul of the Due Process Clause as interpreted by the Supreme Court in Lawrence." Id. at 557 (citing Toghill v. Commonwealth, 768 S.E.2d at 681). Because the Supreme Court of Virginia "plainly" had the "power and prerogative" to provide a narrowing construction of the statute, the Fourth Circuit yielded to considerations of comity and respected the Virginia Supreme Court's "ability to narrow state statutes so as to limit the statute's scope to unprotected conduct." Id. at 558 (quoting Osborne v. Ohio, 495 U.S. 103, 120 (1990)). Such deference to a state supreme court's narrowing construction is well accepted. See Hebert v. Louisiana, 272 U.S. 312, 317 (1926); see also Winters v. New York, 333 U.S. 507, 514 (1948).

The Fourth Circuit further observed that the statute, as construed by the Supreme Court of Virginia "may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendan[t]." Toghill, 877 F.3d at 559 (quoting Osborne, 495 U.S. at 115 (internal quotation marks omitted)). At the time of petitioner's conviction, Va. Code § 18.2-361(A) plainly prohibited sodomy between an adult and a minor; thus, petitioner, in accordance with Toghill, was on notice that her actions violated state law. Because petitioner

has not established cause, prejudice, or a fundamental miscarriage of justice, Claim II is defaulted and will be dismissed.

### B. Claim III

The record reflects that petitioner has failed to establish cause with respect to Claim III. The constitutional objection to P.D.'s testimony was waived. Specifically, the state habeas court found that petitioner's trial counsel moved for a mistrial following P.D.'s victim impact statement, but did not argue that P.D's victim impact statement violated petitioner's Eighth Amendment rights until her June 16, 2011 "Motion for Mistrial & Renewed Motion on All Previous Motions and Objections Therefrom," which was made well after trial. Final Order, Linnon v. Brown, Case No. 085CL14001027-00 (Hanover Cty. Ciruit Court June 22, 2016). Petitioner asserts that even if her argument was not properly preserved, she can show cause for non-compliance with state law because she received "Ineffective Assistance of Trial Counsel as listed as ground I (a)." Dkt. No. 22 at 40. For the reasons discussed in further detail below, petitioner has failed to demonstrate ineffective assistance of counsel. In addition, the record does not disclose that a factor external to the defense impeded compliance with any state procedural rule, nor is Claim III at all novel. In short, the record establishes no cause. As to petitioner's arguments regarding prejudice, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996). Thus, because petitioner has not established cause or demonstrated her actual innocence, Claim III is defaulted and will be dismissed.

### III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law,

or was based on an unreasonable determination of the facts presented at the trial. 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412–13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Importantly, this standard of reasonableness is an objective one. Id. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003). A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

17

## IV. Analysis

### A. Claim I

Petitioner argues that she received ineffective assistance of trial and appellate counsel for three reasons. To prevail on an ineffective assistance of counsel claim, petitioner must meet the two-pronged test established in Strickland v. Washington, 455 U.S. 668 (1984). Under this test, petitioner must prove both that her attorneys' performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance prejudiced the outcome of petitioner's trial. Strickland, 466 U.S. at 687. To meet the second prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The two prongs, deficient performance and prejudice, constitute "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Therefore, a court can appropriately dismiss an ineffective assistance of counsel claim on either prong. Strickland, 466 U.S. at 697; see also Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citations omitted) ("Without proof of both deficient performance and prejudice to the defendant, we concluded it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand."). A court reviewing a claim of ineffective assistance of counsel must presume that counsel acted competently, and should determine the merits of the claim based on the information available to the attorney at the time of the trial. See, e.g., Bell, 535 U.S. at 695; Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

### i. Victim Impact Statement

Petitioner first argues that her "trial counsel was ineffective when he failed to object during the sentencing hearing to the statement by T.D's mother, failed to ask to preview the

written statement before it was read, failed to request a curative instruction after it was read, and waited three months after the jury was excused to move for a mistrial." Pet. at 32. As proof of counsel's ineffectiveness, petitioner points to the state habeas court's alleged finding "that trial counsel's half-hearted motion for a mistrial at the close of the witness's testimony was 'insufficient' and that any objection to the testimony was 'waived.'" Dkt. No. 22 at 14.

Petitioner appears to misinterpret the state habeas court's findings. The state habeas court denied this claim because of petitioner's "inability to establish prejudice, a finding [it had] already made [during sentencing and the October 27, 2011, motions hearing] and which the Court of Appeals has affirmed on its merits." Final Order, Linnon v. Brown, Case No. 085CL-14001027-00 at 4 (June 2, 2016). Petitioner was convicted of four serious crimes involving minors, and the underlying facts and supporting testimony were graphic and unflattering to petitioner. Indeed, petitioner faced a maximum of twenty years, but she was sentenced to only nine. Id. Notably, the trial court observed that three of the four sentences were within "the low end of the range." Hr'g Tr. Oct. 27, 2011, at 168–69. On appeal, the Court of Appeals of Virginia upheld the trial court's ruling and concluded that "at most [P.D.'s testimony] constituted harmless error."

Nevertheless, the state habeas court provided a cursory discussion of the deficient performance prong of Strickland, observing that petitioner's counsel objected to the statement made by P.D. during the sentencing hearing by making the "same objection," as Craig Linnon's counsel,[10] which was overruled on the merits. Final Order, Linnon v. Brown, Case No. 085CL-14001027-00 at 5 (June 2, 2016). In the state habeas court's view, "an objectively reasonable attorney could have believed his objection and requested curative action was appropriate," and that "the testimony was so inflammatory that only a mistrial would cure the error." Id. at 5–6.

---

[10] Craig Linnon's counsel stated that P.D. had "inflame[d] the jury," and that he felt "compelled to make a motion for mistrial at this point." Trial Tr. Vol. I, March 29, 2011 at 404–07.

As to the failure to ask for a curative instruction, the habeas court found that "it is well recognized that the failure to ask for a curative instruction is a reasonable trial tactic in order to avoid drawing undue attention to such information." Id. at 6.

The state habeas court's decision was not contrary to or an unreasonable application of existing federal law. To the contrary, it is well accepted under federal law that an attorney's failure to object to certain testimony is within the bounds of sound trial strategy. See Jones v. Clarke, 783 F.3d 987, 994 (4th Cir. 2015) ("There may be cases when not objecting is supported by sound trial strategy, such as when counsel does not want to draw additional attention to the evidence or provide the opportunity for another government witness to testify."); Moore v. United States, 934 F. Supp. 724, 727 (E.D. Va. 1996) ("[A]ll experienced practitioners recognize that not infrequently, it is better to remain silent than to draw attention to a matter by offering an objection."). Federal courts have also recognized that trial counsel may decline a curative instruction for strategic reasons. See United States v. Harris, 14 F. App'x 144, 146 (4th Cir. 2001) (concluding that counsel's trial strategy to forego curative instruction that would remind jurors of particular evidence was reasonable); Smith v. Walsh, No. 02 CIV. 5755 WHP-JCF, 2003 WL 21649485, at *6 (S.D.N.Y. July 14, 2003) (concluding that defense counsel's failure to pursue a curative instruction following the denial of motion for mistrial was appropriate trial strategy); see also United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010) (decisions regarding mistrial are tactical decisions entrusted to sound judgment of counsel). Accordingly, the state habeas court's finding that trial counsel was not deficient is neither contrary to, nor an unreasonable application of, existing federal law and Supreme Court precedent. It also does not rest upon an unreasonable finding of fact. Therefore, the state habeas court's ruling is entitled to deference, and subsection (a) of Claim I will be dismissed.

20

*ii. Counsels' Failure to Challenge Constitutionality of Sodomy Statute*

Petitioner next argues that her trial counsel was ineffective for failing to challenge Va. Code § 18.2-361(A) as unconstitutional based on the prevailing case law at the time of petitioner's trial, and that her appellate counsel was similarly ineffective when he failed to challenge Va. Code § 18.2-361(A) as unconstitutional based on the prevailing case law while her appeal was pending.

As to trial counsel, the state habeas court denied petitioner's claim because "existing caselaw at the time of petitioner's trial regarding the 'facial validity' of the sodomy statute (March 11) was the published [Virginia] Court of Appeals decision in MacDonald's case, McDonald v. Commonwealth, 630 S.E.2d 754 (2007)," which found that MacDonald's challenge to the sodomy statute was "without merit." Final Order, Linnon v. Brown, Case No. 085CL-14001027-00 at 6 (June 2, 2016). Therefore, an objectively reasonable attorney could have chosen not to raise the issue during petitioner's trial. Id. Similarly, the state habeas court denied petitioner's claim regarding appellate counsel because an objectively reasonable appellate counsel would have believed that a constitutional challenge to the sodomy statute, which was not made at the trial level, was defaulted and could not be raised on appeal. Id. at 7. The state habeas court also found that petitioner could not establish prejudice with respect to either claim following the Supreme Court of Virginia's ruling in Toghill v. Commonwealth, 768 S.E.2d 674 (Va. 2015). Thus, the state habeas court concluded that petitioner failed to satisfy either prong of the Strickland test. Id. at 7.

Based on the Fourth Circuit's recent decision in Toghill v. Clarke, 877 F.3d 547, 549 (4th Cir. 2017), discussed above, petitioner cannot establish that she was prejudiced by trial and appellate counsel's failure to challenge the constitutionality of Va. Code § 18.2-361(A). Therefore, the state habeas court's decision is neither contrary to, nor an unreasonable

application of, existing federal law and Supreme Court precedent. In addition, the state habeas court's decision does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference, and subsections (b) and (c) of Claim I will be dismissed.

### B. Claim IV

#### i. Procedural Analysis

Claim IV was raised for the first time by petitioner after the state habeas court's June 2, 2016 final order, in a June 22, 2016 "Motion to Reopen and to Allow Petitioner to Amend her Petition for Writ of Habeas Corpus." Virginia Supreme Court Rule 1:1 provides, in relevant part, "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." "The running of the twenty-one-day period commences with the entry of the final order and 'may be interrupted only by the entry, within the 21–day period after final judgment, of an order suspending or vacating the final order.'" Minor v. Commonwealth, 791 S.E.2d 757, 762 (Va. Ct. App. 2016) (quoting James v. James, 562 S.E.2d 133, 137 (Va. 2002)). Post-trial motions, such as the one filed by petitioner, do not toll the running of the twenty-one day period. Minor, 791 S.E.2d at 762.

When petitioner appealed the state habeas court's decision to the Supreme Court of Virginia, she did not list Claim IV as an assignment of error, Linnon v. Clarke, Record No. 161286, Petition for Appeal at 1, 23-35; however, petitioner argued Claim IV in the arguments section of her petition.[11] Id. at 23. Respondent argues that, due to petitioner's failure to

---

[11] It appears that petitioner's counsel simply forgot to add a subsection to the assignments of error section of the petition because the Assignments of Error section ends at subsection "V" while the corresponding argument section ends at subsection "VI."

specifically include Claim IV in her assignments of error, petitioner has no basis to assert that Claim IV was fairly presented in a state court.

Virginia Supreme Court Rule 5:17, states, in pertinent part, that a petition for appeal must contain:

> (1) Assignments of Error. Under a heading entitled "Assignments of Error," the petition shall list, clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely, or the specific existing case law that should be overturned, extended, modified, or reversed. An exact reference to the page(s) of the transcript, written statement of facts, or record where the alleged error has been preserved in the trial court or other tribunal from which the appeal is taken shall be included with each assignment of error.

The Supreme Court did not address this issue when it summarily dismissed the petition for appeal. Nevertheless, because a "decision by a state court that summarily dismisses a petitioner's claim as meritless is an adjudication on the merits within the meaning of § 2254(d)" this Court will decide petitioner's Claim IV on the merits.[12] Weeks v. Angelone, 4 F. Supp. 2d 497, 522 (E.D. Va. 1998), dismissed, 176 F.3d 249 (4th Cir. 1999), aff'd, 528 U.S. 225 727 (2000).

### ii. Analysis on the Merits

Petitioner argues that she was convicted and sentenced in violation of the Sixth and Fourteenth Amendments to the United States Constitution because the Commonwealth concealed offers of favorable treatment to Tyler Scott, a witness for the prosecution. Specifically, petitioner contends that "[b]y failing to disclose the plea agreement, the Commonwealth allowed a false impression to be created at trial when the truth would have impugned the veracity of its key witness." Pet. at 20. In petitioner's view, "Scott's testimony was the linchpin to the

---

[12] This Court's consideration of Claim IV is consistent with AEDPA's objective of strongly discouraging state prisoners from presenting a claim for the first time in federal court because petitioner moved to amend her state habeas petition to include Claim IV, and she included the argument in her petition for appeal to the Supreme Court, which summarily dismissed her appeal. Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

Commonwealth's case," and the Commonwealth "enhanced his credibility by denying the possibility of a deal." Id. at 22. Therefore, petitioner contends, there is "a reasonable likelihood that Scott's false testimony affected the judgment of the jury." Id.

This claim fails because nothing in the record establishes that petitioner's claim was obstructed by the Commonwealth's failure to disclose a plea agreement between Tyler Scott and the Commonwealth at the time of trial. In fact, the record shows that such an agreement was reached only "after Mr. Scott testified in . . . [petitioner]'s trial." Aff. of Shari Skipper ¶ 2, Dkt. No. 16, Ex. 1. Specifically, the prosecutor's affidavit attached to respondent's Motion to Dismiss states that Scott was not offered a plea deal until after he testified in petitioner's trial. Because Scott was not offered a deal until after testifying at petitioner's trial, his testimony and the prosecutor's representations at trial were not false. Petitioner attempts to overcome this evidence by showing that Scott's trial was continued until after petitioner's trial and that Scott was given a plea deal for his "cooperation in another case;" however, this evidence is insufficient to establish that Scott was given a deal for his testimony in petitioner's case prior to petitioner's trial. This court decided the same issue in Craig Linnon's petition for habeas corpus, reaching an identical conclusion. See Linnon v. Clarke, 232 F. Supp. 3d 850, 858 (E.D. Va. 2017) ("[Craig Linnon's] argument is based on the erroneous assumption that the prosecution gave Scott a plea deal for his testimony in advance of Scott's testifying at petitioner's trial. The record discloses the contrary.").[13] Based on the foregoing, the habeas court's decision is neither contrary to, nor an unreasonable application of, existing federal law and Supreme Court precedent. In addition,

---

[13] Petitioner's claim that she received ineffective assistance of post-conviction counsel during her state habeas proceedings, which was raised for the first time in this court, See Dkt. No. 7, is unexhausted and procedurally defaulted. Moreover, no plea agreement existed between Scott and the Commonwealth at the time of petitioner's trial, and therefore, she cannot establish prejudice from counsel's failure to properly present her Brady claim in the original state petition.

the state habeas court's decision does not rest upon an unreasonable finding of fact. Therefore, the state habeas court's ruling is entitled to deference, and Claim IV will be dismissed.

## IV. Conclusion

Petitioner's Claims II and III are procedurally barred. As to Claims I and IV, nothing in the state court record indicates that the state habeas court's decisions were contrary to or an unreasonable application of existing federal law and Supreme Court precedent. There is also nothing in the record to indicate that the decisions rest upon an unreasonable finding of fact. Accordingly, this petition will be dismissed, with prejudice, by an Order to be issued with this Memorandum Opinion.

Entered this ___23rd___ day of ___Feb.___ 2018.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia